**HUNT PAVING CO., INC., and Indiana Constructors, Inc., Plaintiffs,**

v.

**CITY OF INDIANAPOLIS, et al., Defendants.**

**No. IP 90–1578–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 19, 1992.

Peter G. Tamulonis, John B. Drummy, Kightlinger & Gray, Indianapolis, Ind., for plaintiff, Hunt Paving Co., Inc.

Richard A. Waples, Peggy A. Hillman, Indiana Civil Liberties Union, Indianapolis, Ind., for plaintiff, Indiana Constructors, Inc.

Andrew P. Wirick, Barbara Malone, City–County Legal Div., Indianapolis, Ind., for defendant, City of Indpls. and div.

John O. Moss, Moss & Walton, Indianapolis, Ind., for defendants.

## ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY

TINDER, District Judge.

Plaintiffs brought this action seeking to challenge the constitutionality of Defendants' procedure for awarding municipal construction contracts. Plaintiffs alleged that Defendants' affirmative action plan unlawfully denied Plaintiffs equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. Defendants replied that Plaintiffs lacked standing to prosecute that claim and, alternatively, that Plaintiffs' claims failed on the merits. Plaintiffs filed a Motion for Summary Judgment as to Liability; Defendants filed a Motion for

Summary Judgment seeking a judgment in Defendants' favor on all claims stated by both Plaintiffs. The parties have exhaustively briefed their motions and the Court has heard oral argument on them. For the reasons discussed below, the Court finds that some of Plaintiffs' claims fail for lack of standing and the remaining claims fail on the merits.

## BACKGROUND AND FINDINGS OF FACT

### I. *The Players*

Plaintiff The Hunt Paving Company, Incorporated ("Hunt Paving") and Contractor's United, Incorporated ("CUI") are Indiana corporations engaged primarily in the business of highway construction. (McNelis Aff. ¶ 2; Brunner Aff. ¶ 2.) Plaintiff Indiana Constructors, Inc. ("ICI") is a not-for-profit Indiana corporation whose members are engaged in heavy, highway and utility construction in the State of Indiana; Hunt Paving and CUI are members of ICI. (Kahl Aff. ¶ 2.) ICI members have bid, are bidding and will bid on construction projects let by various departments of the City of Indianapolis, including the Department of Transportation. (*Id.* ¶ 8(a).)

Defendant The City of Indianapolis ("City") is a political subdivision organized pursuant to the laws of the State of Indiana. (Ans. ¶ 4.) Defendant William H. Hudnut, III, was the Mayor of the City of Indianapolis at the time Hunt Paving filed this action. (Ans. ¶ 5.) By State law, Mayor Hudnut was empowered and required to supervise the work of the City's departments. (*Id.*) The Board of Transportation ("Board") is an administrative board of the City of Indianapolis Department of Transportation. (Ans. ¶ 7.) Defendant Joseph C. Staehler was the Director of the Department of Transportation ("DOT") and the chief presiding officer of the Board. (Ans. ¶ 8.)

Intervenors Allen Chemical, Inc., Altach Construction, Inc. Coleman Construction,

Inc., Dixie Construction, Inc., and Looper Maintenance Service, Inc. are so-called "minority contractors" in the Indianapolis area and are considered Minority Business Enterprises ("MBE's") by the City.

### II. *The Mayor's Executive Order No. 1, 1987*

On February 27, 1987 Mayor Hudnut issued Executive Order No. 1, 1987 (the "Executive Order").[1] The Executive Order declared as a "goal" of the Mayor's administration "to achieve significant utilization" of minority-owned and woman-owned business enterprises "in at least a dollar amount equal to [ten and two percent, respectively] of the annual amount spent by the City of Indianapolis for construction, goods and supplies and professional services...." (Executive Order, Declarations). The Executive Order ordered that:

> The Division of Equal Opportunity shall continue development and implementation of the city-wide plan for utilization of minority-owned business enterprises and women-owned business enterprises and for compliance with affirmative action and prevailing wage requirements. This plan shall describe the efforts of the City to achieve its goals, shall assign responsibility of implementation to the appropriate City officials and shall specifically prescribe the procedures to be used in implementation, including the procedures to be employed upon a finding of non-compliance with any portion of the plan.

(Executive Order ¶ 1.)

> The Directors shall assure that Department bid specifications and contracts include standard language concerning compliance with the City's utilization plan.

(*Id.* ¶ 3.)

> The Division of Equal Opportunity shall maintain a list of those contractors and vendors who have failed to comply (determined in accordance with the non-compliance procedure prescribed by the utilization plan) with the equal opportuni-

---

1. A complete copy of the Executive Order may be found as Exhibit A to Hunt Paving's Complaint. (Ans. ¶ 13.)

ty provisions of City contracts and purchasing policies. Those contractors and vendors included on this list shall be denied City business opportunities for which bids are not required or solicited or be deemed to be non-responsible bidders in the award of City contracts for which bids are required or solicited until such time as the contractor or vendor demonstrates the ability to become compliant pursuant to the utilization plan. (*Id.* ¶ 4.)

III. *The City's MBE/WBE Specifications*

Following the Mayor's Executive Order, the City developed a "Specification for MBE and WBE Participation" (the "Specifications"), which the DOT used in its bidding process.[2] The Specifications, which are stated in fifteen pages, provide in part as follows:

1. POLICY AND GOALS

It is the policy of the [City] that [MBE's and WBE's] shall have the maximum feasible opportunity to participate in the performance of contracts. Consequently, the City establishes the following goals for this project:

A. The MBE goal is ten percent (10%) of the contract price.

B. The WBE goal is two percent (02%) of the contract price.

2. AFFIRMATIVE OBLIGATIONS OF CONTRACTORS AND SUBCONTRACTORS

Each bidder who subcontracts any portion of the work bid shall undertake the following affirmative steps and require their subcontractors to undertake the following affirmative steps and to assure that minority and women's businesses are used when possible as sources of supplies, equipment, construction and services.

[Five steps listed]

3. BIDDER RESPONSIVENESS

A. A properly signed bid commits the bidder to undertake the affirmative ob-

ligations set forth in this policy to achieve the stated goals of MBE and WBE participation

B. As a prerequisite to demonstrate MBE and WBE compliance and goal achievement, the bidder shall provide the following data *with its bid:*

1) Complete MBE/WBE Data Sheet 1 which:

a. Identifies a specific individual who should be contacted on all MBE/WBE matters; and

b. States the proposed percentage of MBE and WBE participation versus the Owner's stated goal based upon the total dollar amount of the contract; and

2) For proposals indicating less than the Owner's stated goal, include a narrative documentation of the positive efforts taken to encourage the utilization of MBE's and WBE's and the reason for the bidder's inability to achieve the stated goals. The Contractor may use MBE Data Sheet 2 or WBE Date Sheet 2 as appropriate for this purpose. If a bidder will not subcontract any of the work under its proposal, a statement to that effect will serve as the narrative documentation required under this paragraph 2.

C. *Failure to submit the information required by this Section shall cause rejection of the bid as non-responsive.*

4. BIDDER RESPONSIBILITY

[Tasks listed for bidders whose documents do and do not "show a commitment to achieving the Owner's stated MBE and WBE goals"]

B. *Failure to submit the information required by this Subsection 4 may cause rejection of the bid as non-responsive.*

. . . .

9. SANCTIONS

A. The Contractor and, where appropriate, its subcontractors shall remedy

---

**2.** A complete copy of the City's Specifications is attached as Exhibit B to Plaintiff's Complaint.

(Ans. ¶¶ 15–16.)

any non-compliance without any increase in the contract price. In the event the non-compliance of the Contract or its subcontractor results in any loss of funding for the project, the Contractor shall reimburse the Owner the amount of the fund loss.

B. If the Owner determines that the Contractor has failed to demonstrate compliance with the requirements of this specification, the Contractor shall be subject to the non-compliance procedures set forth in Executive Order 1, 1987.

## 10. DEFINITIONS

A. "Minority Business Enterprise." A minority business enterprise is a business which is:

1. Certified as socially and economically disadvantaged by the Small Business Administration;

2. Certified as a minority business enterprise by a State or Federal agency; or

3. An independent business concern which is at least 51% owned and controlled by minority group member(s). A minority group member is an individual who is a citizen of the United States and one of the following:

a. Black American;

b. Hispanic American (with origins from Puerto Rico, Mexico, Cuba, South or Central America);

c. Native American (American Indian, Eskimo, Aleut, native Hawaiian); or

d. Asian–Pacific American (with origins from Japan, China, Philippines, Vietnam, Korea, Samoa, Guam, the U.S. Trust Territories of the Pacific, Northern Marianas, Laos, Cambodia, Taiwan or the Indian subcontinent).

B. "Women's Business Enterprise." A Women's Business Enterprise is a business which is certified as such by a State or Federal agency, or which meets the following definition:

A Women's Business Enterprise is an independent business concern which is at least 51 percent owned by a woman or women who also control and operate it.

## IV. *Hunt Paving's Bid for DOT Project SST–29–008*

In early 1990 the DOT solicited bids for Department of Transportation Project ST–29–008 (Requisition No. EP70109), Girls School Road and Washington Street. The Central Purchasing Division of the City began the process by issuing an invitation to bid. The invitation to bid form contained "instructions to bidders," which stated that "All bidders must comply with the Consolidated City of Indianapolis' Mayor's Executive Order 1, 1987" and "All bidders must have on file or submit with each bid any or all forms required with regard to the City of Indianapolis' DEO [3] Program. Failure to do so may cause your bid to be rejected." (Compl.Ex. C at 2.) [4]

Hunt Paving, Grady Brothers, Inc. and Rieth–Riley Construction Co., Inc. submitted bids on this project. (White Aff., Attachment 2.) Hunt Paving's bid included a completed MBE/WBE Data Sheet 1, which showed a proposed MBE participation of 7.8% and a proposed WBE participation of 2%. (*Id.* at 14.) Hunt Paving's bid did not contain Data Sheet 2.

When the City opened the bids on May 31, 1990, Hunt Paving's bid for $230,177.50 was the lowest of the three bids submitted for the project. (Compl.Ex. 3; Ans. ¶ 18.) Grady Brothers bid $231,731.00. (Compl.Ex. D; Grinkmeyer Aff., Attach. at 18.) Rieth–Riley Construction bid $239,910.75. (White Aff., Attach. 2.) Grady Brothers' bid contained MBE/WBE Data Sheet 1, but the sheet did not contain any proposed percentages. (Grinkmeyer Aff., Attach. at 18.) Grady Brothers' bid did not contain Data Sheet 2.

---

**3.** The acronym DEO stands for the Indianapolis Department of Equal Opportunity.

**4.** Exhibit C to Plaintiff's Complaint is a complete copy of the bid Hunt Paving submitted on DOT Project ST–29–008. (Ans. ¶ 18.)

On June 20, 1990, the City held a hearing regarding the awarding of the contract. (*Id.*) Under Indiana law, the Board was required to award the contract to the lowest responsible and responsive bidder. Ind. Code Ann. § 36–1–12–4(b)(8)(A) (Burns 1986). The Board, corporation counsel and representatives of Hunt Paving discussed the bids submitted by the three bidders. Facing the possibility that the Board would reject its bid for failure to submit Data Sheet 2, Hunt Paving offered either to propose a ten percent MBE participation or to submit Data Sheet 2 as a supplement to its bid. (*Id.* at 7.) Board members stated that Hunt Paving's original bid was "non-responsive" because the invitation stated that bidders "shall" submit the required MBE/WBE information. (*Id.* at 3, 17–18.) The Board rejected Hunt Paving's bid as "non-responsive" solely because Hunt Paving failed to submit Data Sheet 2. (Ans. ¶¶ 19–20.) At the point the Board rejected Hunt Paving's bid, the sole issue for their consideration was whether the bid was technically responsive; any issue regarding the MBE/WBE Program, including an assessment of Hunt's "good faith efforts" or review of past performance, etc., is not considered until after the bids are accepted as responsive. (Ransom Aff. ¶¶ 5(b) & 5(c).)

As the then-lowest responsible bidder, Grady Brothers received the contract award. The Board discovered later that Grady Brothers also had failed to submit Data Sheet 2; the Board then determined Grady Brothers' bid non-responsive and awarded the contract to Rieth–Riley Construction Co., Inc. (White Aff., Attach. 8.) Rieth–Riley Construction's Data Sheet 1 proposed an MBE participation of ten percent and a WBE participation of two percent. (White Aff., Attach. 9.)

V. *The City's Treatment of Non–MBE/ WBE Bidders*

No portion of City contracts are "set-aside" for bidders meeting racial or gender classifications; any person or entity may bid on and receive each and every City construction contract, regardless the race or gender of the bidder. There is no evidence that the Board has deemed an MBE or WBE's bid to be responsive notwithstanding the bidder's failure to indicate a "goal" MBE/WBE participation on Data Sheet 1 or to include a completed Data Sheet 2. Further, the evidence submitted in this matter establishes that the Board has never denied a bidder a contract because the bidder proposed a percentage of MBE/WBE participation less the goal desired by the Executive Order. The City has awarded construction contracts to bidders who have proposed a lesser percentage *and* submitted Data Sheet 2.

## DISCUSSION AND CONCLUSIONS OF LAW

### I. *Procedural Posture of this Matter*

Plaintiffs filed a Motion for Summary Judgment as to Liability, which sought a judgment declaring the City's MBE/WBE Program unconstitutional and a judgment enjoining Defendants from implementing or enforcing the MBE/WBE Program. (Pl.'s Mot.Summ.J.Liability; Pl.'s Proposed Final Summ.J.Liability.)[5] Plaintiffs' Motion purported to place at issue the constitutionality of the MBE/WBE Program (under the Equal Protection Clause); that is, Plaintiffs did not move for a judgment of its other claims. Defendants responded in unison; the intervenor Defendants filed a brief in opposition also. Shortly thereafter, Defendants filed their own Motion for Summary Judgment, which sought a judgment in the Defendants' favor on each claim stated by both Plaintiffs. Defendants' Motion effectively stated a cross-motion regarding Plaintiffs' equal protection claim and an independent motion for judgment on all other claims. All motions are fully briefed.

**5.** The motion and supporting documents are captioned "Plaintiff's" because they were originally filed by Hunt Paving alone. Plaintiffs replied in unison to Defendants' response and the Court recognized at oral argument that Plaintiff ICI was a party to the original motion for summary judgment as to liability.

II. *Evidence Admissible at Summary Judgment Stage and Standard Required of Evidence at Summary Judgment Stage*

The parties have submitted evidence conforming generally to Rule 56(e) of the Federal Rules of Civil Procedure. Plaintiffs' evidence consists of the documents attached to the Complaint (verified as true and complete by Defendants' Answers) and affidavits by Charles Kahl, Thomas McNelis, Ted Brunner (with supplement) and Robert Everman. Defendants' evidence is provided in two volumes. The facts provided in the Background and Findings of Fact section of this Entry were either expressly uncontroverted or were established by admissible evidence and not countered by the type of admissible, specific facts required by Rule 56(e) to establish a genuine issue of fact.

Defendants moved to strike certain portions of each affidavit submitted by the Plaintiffs; Defendants argued that the challenged portions were not admissible evidence and should not be considered by the Court. In the alternative, Defendants argued throughout that Plaintiffs' affidavits failed to state the type of "specific facts" required to establish a fact or genuine issue of fact. The Court DENIES Defendants' Motion to Strike; however, the substance of Defendants' contention is sustained because Plaintiffs' affidavits in fact fail to state some specific facts material to establishing Plaintiffs' claims. This deficiency, however, relates to the effect of Plaintiffs' submissions and not their admissibility. The presence or absence of these facts is disclosed generally by the Background and Findings of Fact section of this Entry and will be discussed particularly as necessary below.

### CLAIMS STATED IN HUNT PAVING'S COMPLAINT

I. *Counts I, II and IV: Hunt Paving's Equal Protection Challenge to the MBE/WBE Program*

Although Hunt Paving established facts related solely to the rejection of its particular bid, Hunt Paving filed this action with the goal of enjoining the entire MBE/WBE Program. The facts established in this matter direct the conclusion that neither Hunt Paving nor ICI has standing to bring a broad-based challenge to the MBE/WBE Program. Plaintiffs do have standing, however, to ask this Court to determine whether Defendants' *act* of rejecting Hunt Paving's bid denied Hunt Paving equal protection of the laws. Hunt Paving incorrectly argued that its allegations and facts allow this Court to determine whether the MBE/WBE Program itself violates the Equal Protection Clause. For the reasons discussed below, the Court finds (1) that Hunt Paving has standing only to challenge whether Defendants violated the Constitution by denying the bid, and (2) that the Defendants' conduct in that regard did not violate the Equal Protection Clause.

A. The Allegations in the Complaint and Facts Established Within that Framework Dictate that Hunt Paving Has Standing to Challenge the Rejection of Its Bid Only

The parties' primary dispute in this litigation joined a battle to determine the permissible scope of Plaintiffs' challenge to the MBE/WBE Program. Plaintiffs argued in their briefs and at the hearing as if they ought to succeed on their claims if this Court determined that any portion of the MBE/WBE Program *could* violate the Equal Protection Clause. Defendants replied that Plaintiffs' Complaints do not provide the proper jurisdictional or factual basis to allow this Court to make such a far-reaching analysis. Although Plaintiffs presented a spirited argument to the contrary, the facts and law are clear that neither Plaintiff has presented allegations allowing the sweeping analysis Plaintiffs desire.

B. Hunt Paving Does Not Have Standing to Challenge the MBE/WBE Program

Regardless of Hunt Paving's desire to challenge the entire MBE/WBE Program, the facts demonstrate that it cannot get out of the procedural starting blocks.

To have standing to challenge the MBE/WBE Program as a whole, Hunt Paving must have alleged a personal injury fairly traceable to Defendants' unlawful conduct taken directly pursuant to the Program. *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Frank Rosenberg, Inc. v. Tazewell County*, 882 F.2d 1165, 1168 (7th Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990). Hunt Paving's sole palpable injury relates to Defendants' conduct in rejecting Hunt Paving's bid, which thereby denied Hunt Paving the contract on Project ST–29–008.[6] Thus, only the conduct that resulted in *that* injury may be properly challenged in this cause.

Although Hunt Paving has not established any "contact" with the rest of the MBE/WBE Program, it sought to establish other injuries from the Program. At oral argument Plaintiffs argued with great volume that, even though there is no evidence that the City has ever imposed any type of sanction on any bidder for failing to comply with "required" elements of the Program, the mere "threat" of enforcement is sufficient to confer them standing. As the evidence made plain, Plaintiffs' arguments that they were "subject to" or "required" to conform to "mandatory" unlawful elements of the Program is incorrect. Apparently recognizing that all the evidence was against them, Plaintiffs further argued that the Court should not consider the evidence but rather should just read the MBE/WBE Program documents to see how they *could* cause an injury. A potential injury from a possible application of statutory language does not provide a sufficient jurisdictional footing to allow a federal court to review and enjoin municipal laws.

A bedrock tenet of the constitutional doctrine of standing holds that a claimant must have a distinct and palpable injury directly traceable to the defendant's challenged conduct; conversely, a claimant does not have standing if its injury is merely hypothetical or conjectural. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983); *Billish v. City of Chicago*, 962 F.2d 1269, 1280 (7th Cir.1992); *Love Church v. City of Evanston*, 896 F.2d 1082, 1085 (7th Cir. 1990). A recent decision by the Eleventh Circuit, concerning facts substantially similar to those present here, provides a current and complete discussion of the law of standing as it applies to Hunt Paving's complaint of past and future injury. *Cone Corp. v. Florida Dep't Transp.*, 921 F.2d 1190, 1203–05 (11th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 2238, 114 L.Ed.2d 479 (1991) (no standing established because no "specific, concrete facts" showing particular demonstrable injury). The *Cone* decision supports the common sense conclusion that a party like Hunt Paving has not suffered an injury conferring standing until the part of the law sought to be challenged actually has been applied to the party's detriment.

Other decisions considering the issue of standing in this context have required that the plaintiff (1) actually bid for a contract subject to a rigid percentage set-aside requirement, or (2) bid for and lose a contract because of a substantive provision of the affirmative action program. *O'Donnell Constr. Co. v. District of Columbia*, 963 F.2d 420, 422 (D.C.Cir.1992) (non-MBE firm who was "ready, willing and able" to bid had standing because it could not bid on percentage of contracts expressly set-aside for MBE firms);[7] *Northeastern Fla.*

---

6. Hunt Paving also alleged that it made subcontracting decisions based solely on the racial classifications of the subcontractors. (Compl. ¶¶ 23–24.) To the extent that this attempts to state an "injury," the deficiency of this claim is addressed fully in the following section discussing ICI's claims.

7. Plaintiffs cited this decision as if it were authority in their favor; that is not the case. Unlike the facts of this case, where every contract is available to every bidder, the *O'Donnell* case

featured a strict thirty-five percent set-aside system; the plaintiff could not bid for and be denied these contracts because there was no mechanism at all for them to place a bid for the contracts. Thus, unlike this case, there was no question that the law operated to deny contracts to non-MBE firms strictly on the basis of their racial category. The type of injury the court found in that case—loss of opportunity to compete on an *equal* footing for those contracts—is not present in this matter.

*Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 951 F.2d 1217, 1219 (11th Cir.1992) (contractors did not have standing because they did not allege any specific contract lost); *Coral Constr. Co. v. King County*, 941 F.2d 910 (9th Cir.1991) (injury occurs when bidder places an otherwise responsive bid); *Maryland Highway Contractors Ass'n, Inc. v. State of Maryland*, 933 F.2d 1246, 1252 (4th Cir.1991) (must have specific facts of injury for article III standing); *Cone Corp.*, 921 F.2d at 1206 (plaintiff must point to specific contract lost to have standing); *United Fence & Guard Rail Corp. v. Cuomo*, No. 88–CV–306, 1991 WL 197675, *5 (S.D.N.Y.1991) (standing conferred to contractor who submitted affidavits and evidence establishing a number of contracts lost to MBE's under challenged program); *Michigan Road Builders Ass'n v. Blanchard*, 761 F.Supp. 1303 (W.D.Mich.1991)[8]; *Capeletti Bros., Inc. v. Broward County*, 738 F.Supp. 1415, 1416 (S.D.Fla.1990), *aff'd*, 931 F.2d 903 (table), *cert. denied*, —— U.S. ——, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991) (plaintiffs lacked standing to object to program because they lacked injury-in-fact); *Contractors Ass'n of E. Penn., Inc. v. City of Philadelphia*, 735 F.Supp. 1274, 1283 (E.D.Pa.1990) (plaintiffs must come forward with evidence that bids had been denied and not merely statements that they "generally bid on these types of projects"); *Associated Gen. Contractors of Conn., Inc. v. City of New Haven*, 130 F.R.D. 4, 8 (D.Conn.1990) (firms who have actually submitted bids have standing to challenge rigid set-aside program); *cf. Price v. Pierce*, 823 F.2d 1114, 1118 (7th Cir.1987) (prospective tenants who actually filled out

formal applications for housing had standing to challenge housing program). The sum of these cases is plain: A party must demonstrate an actual injury from an actual application of the substantive portions of the law to have standing to challenge the law. The mere existence of the Program—and the "threat" that it may someday be enforced—does not properly posture the Program for a constitutional challenge in a forum that may only consider controversies founded on actual injuries.[9]

The only colorable connection between Hunt Paving and the MBE/WBE Program concerns Hunt Paving's bid on Project ST–29–008. Undisputed facts disclose that Hunt Paving's bid was "non-responsive" to the DOT's invitation to bid for that project. The invitation to bid was stated in mandatory terms and expressly required bidders to complete Data Sheet 1 *and* Data Sheet 2 or a narrative statement, if necessary. Hunt Paving's bid failed to meet the requirements set forth in the invitation to bid because Hunt Paving failed to include Data Sheet 2 even though Hunt Paving's figures on Data Sheet 1 dictated that Hunt Paving complete Data Sheet 2 also. Therefore, the Board rejected Hunt Paving's otherwise superior bid solely because it failed to meet a basic criterion required of all responsive bids.

Hunt Paving agreed that its bid was technically non-conforming; but, it argued that the rejection directly concerned the MBE/WBE Program and therefore provided a basis for a direct challenge to the MBE/WBE Program. This argument misperceives the permissible scope of analysis dictated by the facts of this case. Plain-

---

**8.** A portion of this decision states plainly the conclusion of law applicable to this matter:

> [Plaintiff Goff] did not apply for either of the contracts shown to him in the advertisements. Nor did Goff testify that Spartan was available to complete the advertised projects. He only testified that he would have applied for the contracts because those were the type of projects upon which his company normally bid. Thus, the alleged injury Goff sustained is purely conjectural and hypothetical. Plaintiffs have not shown any real, concrete injury.

*Id.* at 1310.

**9.** Defendants introduced evidence establishing that some bidders received contracts without meeting the MBE/WBE Program's subcontracting goals. At oral argument, Plaintiffs argued that because the Program contains a threat of enforcement, Defendants must introduce evidence explaining why they did *not* penalize these bidders. This position turns the whole matter on its head. Defendants need not show why they did not impose any sanctions, but rather, Plaintiffs are required to introduce evidence establishing an actual injury. *Warth v. Seldin*, 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975).

tiffs did not gain standing to challenge the entire MBE/WBE Program simply because the Board rejected Hunt Paving's bid due to a procedural step somewhat related to the MBE/WBE Program. Hunt Paving's "jurisdictional connection" to the MBE/WBE Program begins and ends with the rejected bid.

Defendants have never denied Hunt Paving a construction contract *because* Hunt Paving failed to pledge a particular percentage of a contract to MBE/WBE's. Hunt Paving has not alleged that it ever submitted a technically responsive bid and yet was denied because the bid failed to propose MBE/WBE participation at or beyond the 10%/2% goal. Moreover, Defendants have never denied Hunt Paving a construction contract because Hunt Paving proposed a lesser participation percentage but yet provided a "Data Sheet 2 reason" that the Board deemed unacceptable. The only situation within the facts concerns a 7.8%/2% bid rejected for complete failure to include Data Sheet 2 or a narrative statement. Thus, the only portion of the MBE/WBE Program that has in fact been applied to Hunt Paving is the requirement that a bidder proposing a lesser amount include the extra document explaining the figure provided.

Because Hunt Paving has no facts to support a claim related to an actual application of other portions of the MBE/WBE Program, Hunt Paving's arguments against the Program are premised on "what ifs" and other contentions based on speculative application. Obviously, a process requiring bid *data* and narrative *statements* regarding a goal figure for MBE/WBE participation is distinct from a bid process where a percentage of each contract is required to be set aside for certain groups. Defendants denied Hunt Paving a contract because Hunt Paving failed to submit a bid component required by the MBE/WBE Program, so Hunt Paving's claim allows it to challenge only that por-

tion of the MBE/WBE Program that requires the bid component.

### C. Standard by Which Constitutionality of Defendants' Conduct Is Determined

Plaintiff Hunt Paving claims that the Executive Order and the related MBE/WBE Specifications (collective referred to in this Entry as the "MBE/WBE Program") violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as 42 U.S.C.A. § 1981 (West 1981), by affording different treatment to similarly situated persons solely on the basis of race, ethnicity and gender.[10] The Equal Protection Clause provides that "[n]o State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The "law" in question is the portion of the bid process requiring Data Sheet 1 and Data Sheet 2 for "responsive" bids. Thus, the issues are whether Defendants denied Hunt Paving the protection of that law and whether the requirement that Hunt Paving submit Data Sheet 2 (and, in effect, Data Sheet 1 also) denies Hunt Paving the equal protection of that law.

### D. Defendants Have Not Denied Hunt Paving the Equal Protection of the Laws By Rejecting Hunt Paving's Bid for Failure to Submit Data Sheet 2

■ Defendants conduct toward Hunt Paving—rejecting its bid on Project ST–29–008—did not deny Hunt Paving the equal protection of the law. The City's bidding requirements do not themselves establish racial classifications; they apply "equally"—and provide equal "protection"—to all bidders, regardless of race or gender. Hunt Paving's lone argument relating to the bid process contended that, all other things equal, Defendants would not have rejected Hunt Paving's bid if Hunt Paving

---

**10.** Hunt paving also contended that Defendants "violated" 42 U.S.C.A. § 1983 (West 1981). That section cannot be technically "violated" because it provides no substantive rights; rather, it cre-

ates a remedy for a cause of action based upon a violation of the constitution and/or other laws of the United States.

were an MBE or WBE. (Pls.' Resp.Defs.' Mot.Summ.J. at 13.) This argument is supported neither by the facts nor by the relevant plain language of the MBE/WBE Program. Thus, regarding the components Data Sheet 1 and Sheet 2 or narrative statement, the bid process is constitutional in practice and in theory.

Every otherwise-qualified and responsive contractor may compete for any City contract regardless the contractor's race or gender. The City has not "set aside" any percentage of City contracts for a particular group. Every contract bidder, regardless of the bidder's "enterprise" characteristics, may receive a City contract without regard to the racial or gender classification of the bidder or its proposed subs. The only feature of the bidding process even remotely related to race or gender is that bidders must document their proposed MBE and WBE participation figures. However, this feature of a bid applies equally to all bidders.

Hunt Paving submitted no evidence supporting its claim that it would have received the Project ST–29–008 contract if it were an MBE or WBE. Hunt Paving did not attempt to show that Defendants have in fact awarded contracts to MBE or WBE bidders who have failed to submit Data Sheet 2 after failing to propose "goal" participation figures. Notwithstanding, Hunt Paving argued that an MBE or WBE would have received the contract if it submitted a bid identical to Hunt Paving's bid. This is patently incorrect. An MBE bidding to be a prime contractor must complete Data Sheet 1. The MBE bidder must indicate what percentage of the contract it will perform; and, if applicable, what percentage it

proposes for MBE subcontractors (this would be a single figure entered in the MBE section of Data Sheet 1). If the figure for MBE participation is less than ten percent, then the MBE bidder must include Data Sheet 2—neither the MBE/WBE Program nor the invitation to bid even remotely implies any variance to this requirement for MBE bidders.

Moreover, even if an MBE or WBE bidder's proposed participation exceeds the goal percentage, the percentage participation for the second category (MBE or WBE) is an independent component of the bid. For example, an MBE bidder proposing to do fifty percent of a contract must also indicate at least a two percent WBE participation *or* complete Data Sheet 2 regarding its proposed WBE participation figure.

Identical bids of an MBE/WBE bidder and a non-MBE/WBE bidder will meet the same terminal fate if the bid fails to comply with the technical provisions of the invitation to bid. Defendants' bid process and requirements do not create any class of bidder based on race or gender; rather, the process creates but two classes of bidders: those who comply with the technical aspects of the invitation to bid and those who do not. The law governing responsive bids, which is the only portion of the MBE/WBE Program at issue here, protects all bidders equally.[11]

Therefore, Defendants' Motion for Summary Judgment is GRANTED to the extent that it seeks a favorable judgment on Hunt Paving's claim that Defendants violated the Equal Protection Clause of the Fourteenth Amendment and Article 1, § 23 of the Constitution of the State of Indiana.[12]

---

**11.** Plaintiffs argued that the mere provision of the data required on Data Sheet 1 and Data Sheet 2 imposes an economic cost on non-MBE/WBE bidders not borne by MBE/WBE bidders. Plaintiffs introduced evidence establishing that they incur administrative expenses of $10,000 annually to comply with the MBE/WBE Program. Presumably some of these costs are incurred in preparing bids and contacting MBE/WBE subcontractors for their bids. The fact that Hunt Paving *has* incurred these costs does not establish that they would have been sanctioned or injured for failing to do so. This argument fails for the same general reason

Plaintiffs' other arguments for standing fail: Plaintiffs cannot establish that any bidder has been injured for failing to comply with these provisions of the Program.

**12.** The Constitution of State of Indiana provides that: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Ind. Const. Art. 1, § 23. This provision and the Fourteenth Amendment to the United States Constitution protect identical rights. *Kent v. Cook*, 637 F.Supp. 1005 (N.D.Ind.1986); *Lutz v. Arnold,*

## II. *Count III: Claim Under § 1981*

 Given the preceding conclusions, the lack of merit present in Hunt Paving's § 1981 claim becomes apparent solely by referring to legal authority cited by the Plaintiffs. Plaintiffs cited the United States Supreme Court thus:

> The statute [§ 1981] prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms.

*Patterson v. McLean Credit Union,* 491 U.S. 164, 176–77, 109 S.Ct. 2363, 2372–73, 105 L.Ed.2d 132 (1989) (cited by Plaintiffs at Pls.' Resp.Defs.' Mot.Summ.J. at 28). There is absolutely no evidence in the record that Defendants refused to enter into a contract with Hunt Paving, or offered to do so only on discriminatory terms. The offer at issue, the invitation to bid on Project ST–29–008, was administered in a racially-neutral manner. All evidence admits of a single conclusion: Defendants rejected Hunt Paving's bid (denied the contract) solely because Hunt Paving failed to submit a bid responsive to the race-neutral invitation. This Court has previously concluded that those "terms" of Defendants' offer were constitutional. Thus, no facts in this matter support Hunt Paving's Claim that Defendants' violated § 1981.

Therefore, Defendants' Motion for Summary Judgment is GRANTED to the extent it seeks a judgment in Defendants' favor regarding Hunt Paving's § 1981 claim.

## III. *Count V: Claim Under State Law*

 This Count contains a mish-mash of allegations, each of which attempts to find a State law chink in the Board's decision to reject Hunt Paving's bid after denying Hunt Paving the opportunity to supplement its bid. Hunt Paving prayed for the "damages suffered from the wrongful denial of DOT Contract ST–29–008." (Compl., Prayer ¶ 4.) To the extent it states any claim, Count V states a claim between non-diverse parties based solely on Indiana law. Because the Court has determined all claims

over which it has original jurisdiction, and because Court V states a claim raising novel or complex issues of State law, the Court may properly decline to exercise supplemental jurisdiction over the claim. 28 U.S.C.A. § 1367 (West Supp.1992). Therefore, the Court will dismiss this claim without prejudice.

## CLAIM STATED IN ICI'S COMPLAINT

The ICI, an association, filed a Complaint claiming that Defendants' MBE/WBE Program violated the Fourteenth Amendment by discriminating against non-MBE/WBE's in the letting of contracts. The Complaint alleged that members of the ICI suffer injury because

> ICI member bidders who are not MBEs or WBEs and who intend to subcontract any portion of the work have been, are being and will be required to subcontract an amount of work at least equal to 10% of the contract price to MBE's and an amount of work at least equal to 2% of the contract price to WBEs or explain to the satisfaction of the contracting department why, despite good faith efforts, such minimum subcontract amounts could not be achieved.

(ICI Compl. ¶ 9(b).) Further, ICI alleged that

> ICI member bidders who fail to meet the 10% MBE/2% WBE subcontractors requirements and who fail to satisfy the DOT and other contracting agencies of their good faith efforts toward meeting such requirements have been and will be denied contract awards even though they have submitted the lowest bid and even though their bids are otherwise responsive and even though they are otherwise responsible contractors.

(*Id.* ¶ 9(c).) The remainder of the allegations state that the MBE/WBE Program has "required" ICI members to make subcontracting decisions based solely upon the race and gender of the subcontractors.

Facts developed at this stage of the proceeding make plain that ICI's claims are

---

208 Ind. 480, 193 N.E. 840 (1935). Thus, this Court's analysis and conclusion regarding Hunt

Paving's Art. 1, § 23 claim is identical to that provided above for the Fourteenth Amendment.

deficient in two material respects. First, the allegations quoted above are completely unsupported by the type of evidence required to survive a summary judgment. Second, ICI's claims premised on allegations that the MBE/WBE Program "required" members to make certain subcontracting decisions are insufficient as a matter of law and fact.

### A. ICI Has Submitted No Evidence Supporting Its Claim That Defendants Have Denied ICI Members Contracts Solely Because the Members' Bids Failed to Meet the MBE/WBE Program Goal Percentages

■ The record contains a single item of evidence purportedly in support of ICI's factual allegation that ICI members have been "required" to meet the City's goal participation percentages and have been denied contracts for failing to do the same. Paragraphs 8(b) & 8(c) of the affidavit of Charles V. Kahl of ICI merely repeats verbatim the factual allegations stated in Paragraphs 9(b) & 9(c) of ICI's Complaint.[13] Given that these conclusory, non-specific statements purport to be the only factual support for ICI's contentions, the question is whether these statements could properly support a finding of fact at this stage of the proceedings.

Defendants have met their burden of "showing" the Court that there is no genuine issue of fact regarding ICI's contention that Defendants denied contracts to members who failed to satisfy the 10%/2% proposed participation figures. Defendants have submitted evidence establishing that the City awarded a number of contracts to bidders who proposed MBE/WBE participation less than the goal amounts. (Ransom Aff., Ex. 5.)

A party opposing summary judgment may not merely rest on the allegations stated in its pleadings; the question is whether the party has submitted "specific facts" by way of admissible evidence sufficient to support a reasonable finding of fact supporting the party's material factual

allegations. Fed.R.Civ.P. 56(e). Although Mr. Kahl's affidavit may be admissible evidence, it contains merely conclusory statements devoid of any specific facts. That affidavit, which is the lone piece of evidence supporting ICI's allegations regarding rejected contracts, is insufficient to substantiate the factual allegations stated in ICI's Complaint.

Therefore, Defendants' Motion for Summary Judgment is GRANTED to the extent it seeks a favorable judgment of ICI's claim that Defendants discriminated against ICI members by denying them contracts for failing to satisfy the MBE/WBE Program goal percentages.

### B. ICI's Claims Regarding "Required" Subcontracting Practices Is Not Properly Presented on the Facts Established in this Matter

■ The conclusion in section A above materially affects the scope of ICI's contentions that its members in fact altered their subcontracting procedures purportedly to comply with the MBE/WBE Program. No ICI member endured an actual penalty because it failed to "comply" with the City's goal percentages; further, no ICI member endured an actual penalty because it failed to take any other steps stated in the MBE/WBE Program. However, ICI contended that it felt and submitted to the icy hand of the MBE/WBE Program even though its members were never actually coerced to do so. To the extent that ICI members have in fact complied with the MBE/WBE Program to their alleged detriment, the issue is whether that type of non-coercive compliance is sufficient to allow ICI to challenge the provisions of the MBE/WBE Program with which the members allegedly complied.

The mere fact that ICI members performed tasks and altered their position based upon *their* interpretation of the MBE/WBE Program does not lead to the conclusion that the MBE/WBE Program *caused* them any injury. Constitutional standing does not turn on the question of

---

**13.** In truth, the paragraphs of the Complaint restate the statements in the affidavit, because the affiant made his statements over a year before ICI filed its Complaint.

fact whether a person reasonably believed that a law applied to his or her situation; on the contrary, standing requires an injury in fact directly caused by the law challenged. It is irrelevant whether or not ICI members prepared their bids (changed their economic position) based on their *belief* of what the MBE/WBE Program required. A party's own legal *opinion* regarding the effect of a law does not provide the basis for an injury when that party follows its own untested advice.

Absent some form of demonstrably coercive conduct by the Defendants pursuant to the MBE/WBE Program, ICI members cannot claim an actionable injury from operation of the MBE/WBE Program. *See Michigan Road Builders Ass'n*, 761 F.Supp. at 1310 (plaintiff does not have standing merely because plaintiff "would have" submitted a bid but for challenged law). As with the failed claim by Hunt Paving, ICI's claim fails because it has asked the Court to declare the MBE/WBE Program unconstitutional even though ICI members cannot demonstrate an actual injury caused by the MBE/WBE Program. A bidder must "place its hand in the fire" to gain constitutional standing.[14] The bidder must actually submit a bid technically complete yet failing to meet the percentage goals and then receive an actual economic reprisal because the bidder failed to meet *substantive* elements of the MBE/WBE Program.[15] Standing to challenge the constitutionality of a local municipal program is not a position earned easily or hypothetically; in this matter, it is a jurisdictional requirement not satisfied by ICI and therefore ICI has no basis to challenge the MBE/WBE Program because of its perceived effects or speculative application.

Therefore, ICI's claim that the MBE/WBE Program violates members' constitutional rights by requiring them to subcontract in accord with the MBE/WBE Program's substantive terms will be DISMISSED WITH PREJUDICE.

### C. Summary of Conclusions Regarding ICI's Claims

Each of ICI's claims is legally or factually deficient and will be adjudged to be without merit in an appropriate Order and Judgment entered contemporaneously with this Entry.

### CONCLUSION

Hunt Paving's Motion for Summary Judgment on the Issue of Liability is DENIED. Defendants' Motion for Summary Judgment is GRANTED. An appropriate Order and Judgment will be filed contemporaneously with this Entry.

---

**14.** The conclusion regarding standing in this matter may be contrasted sharply with the conclusion by this Court in *Government Suppliers Consol. Serv. v. Bayh*, 753 F.Supp. 739 (S.D.Ind. 1990). In that case, "Indiana officials have pronounced their immediate intent to fully enforce [the tipping fees]." *Id.* at 757. In contrast, there is no evidence that Defendants have applied the MBE/WBE Program in the manner Plaintiffs claim nor must the Program have the application Plaintiffs claim it must. Thus, in the *Government Suppliers* case the evidence and plain language of the statute both indicated that the plaintiff would undeniably suffer an economic injury from operation of the pending law; here, there is absolutely no evidence that these Plaintiffs have or will suffer the kind of constitutional injury they claim.

**15.** The cases cited in the section of this entry regarding Hunt Paving's standing to challenge the MBE/WBE Program are equally applicable to ICI's claim. *See* cases cited at pp. 747–48, *supra*.